UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

THE KRYSTAL COMPANY, )
)
    *Petitioner*, )
)     No. 1:11-CV-81
v. )     Chief Judge Curtis L. Collier
)
STEVEN A. CALDWELL, )
)
    *Respondent*. )

## <u>MEMORANDUM</u>

Before the Court is Petitioner The Krystal Company's ("Petitioner" or "Krystal") petition to vacate the arbitration award (Court File No. 1) and Respondent Steven A. Caldwell's ("Respondent") motion to confirm the arbitration award with interest (Court File No. 15). Respondent's briefs address the arguments raised in Petitioner's petition to vacate the arbitration award and Petitioner's response to Respondent's counterclaim (Court File Nos. 15, 19). Petitioner's reply brief both offers support for its petition to vacate the arbitration award and raises arguments in opposition to Respondent's counterclaim (Court File No. 18). After considering the record, the applicable law, and the parties' filings, the Court will **DENY** Petitioner's petition to vacate the arbitration award (Court File No. 1), and **GRANT IN PART** Respondent's motion to confirm the arbitration award with interest (Court File No. 15). Specifically, the Court will **CONFIRM** the arbitration award pursuant to 9 U.S.C. § 9. The Court will also **AWARD** Respondent post-award, prejudgment interest, which will be calculated at the effective rate for post-judgment interest under 28 U.S.C. § 1961. Respondent's post-award, prejudgment interest will run from January 7, 2011, until entry of this judgment.

# I.     BACKGROUND

Respondent Steven Caldwell is a former employee of Petitioner The Krystal Company. While employed with Krystal, Mr. Caldwell worked as director of area operations in the Knoxville area and, for a period of time, as territory director of operations over stores in the Knoxville and Chattanooga areas. Mr. Caldwell was terminated by Krystal on May 9, 2007. On May 8, 2008, Mr. Caldwell filed a Request for Arbitration with the American Arbitration Association ("AAA"). In his request, he claimed he was terminated, *inter alia*, on the basis of age and in retaliation for his refusal to discriminate against others on the basis of age, gender, or race.

The parties participated in a hearing before Arbitrator Matthew J. Sweeney III on October 4, 5, and 7, 2010. On January 7, 2011, the arbitrator issued an interim award in which he concluded Respondent was not discriminated against on the basis of age, but that Krystal did unlawfully discharge Mr. Caldwell in retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981; the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101 *et seq.*; the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304; and Tennessee common law. The arbitrator awarded Respondent $475,962 in damages as well as attorney's fees and costs. He also dismissed Krystal's counterclaims. On January 27, 2011, Krystal filed a motion for modification of the interim award pursuant to AAA Employment Arbitration Rule 40, arguing Mr. Caldwell intentionally removed himself from the job market and therefore waived any right to receive front or back pay from that point forward. The arbitrator subsequently denied Krystal's motion on the grounds that no computational error was cited or found, and that the arbitrator lacked authority to redetermine Krystal's claim on its merits. On March 10, 2011, the final award was issued

2

incorporating the interim award and adding a specific sum for attorney's fees and costs. No pre-award, prejudgment interest was awarded.

On April 7, 2011, Krystal filed a petition to vacate the arbitration award. Respondent subsequently filed a counterclaim on May 25, 2011, requesting that the Court confirm the arbitration award and grant post-award, prejudgment interest.

## II.        STANDARD OF REVIEW

As a preliminary matter, "[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (citation omitted). Under the Federal Arbitration Act ("FAA"), there is a presumption that an arbitration award will be confirmed. 9 U.S.C. § 9; *Nationwide Mut. Ins. Co.*, 429 F.3d at 643. The award will have a binding effect on the parties "unless they challenge the validity of the underlying contract to arbitrate under § 2 of the FAA or seek to vacate, modify, or correct the award under §§ 10 or 11." *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 909 (6th Cir. 2000). When a party seeks to vacate or modify an arbitration award under the FAA, sections 10 and 11 of Title 9 of the United States Code "provide [the] exclusive regime[ ] for the review provided by the [FAA]." *Grain v. Trinity Health*, 551 F.3d 374, 378 (6th Cir. 2008) (quoting *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 584 (2008)). The burden of proof is on the party seeking to modify or vacate the arbitrator's decision. *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000).

Petitioner argues the Court has several grounds on which it can vacate or modify the arbitration award. First, Petitioner contends the award should be vacated under either 9 U.S.C. §§

3

10(a)(3) or (4). Under § 10(a)(3), an award can be vacated "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." Section 10(a)(4) authorizes vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Second, Petitioner contends the award should be modified in light of the first of three grounds for modification stated in 9 U.S.C. § 11--that is, "where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a).

Finally, Petitioner claims the arbitrator's alleged "manifest disregard for the law" provides an independent basis upon which this Court can vacate the arbitration award. In *Grain*, the Sixth Circuit observed, "It is true that we have said that 'manifest disregard of the law' may supply a basis for *vacating* an award, at times suggesting that such review is a 'judicially created' supplement to the enumerated forms of FAA relief." 551 F.3d at 380. Yet the Sixth Circuit further noted that the Supreme Court's reference in *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008), to the "exclusive statutory grounds [found in the FAA]" for vacatur "casts some doubt on the continuing vitality of that theory." *Id.* (internal quotation marks omitted). *But see Coffee Beanery Ltd. v. WW, LLC*, 300 F. App'x 415, 419 (6th Cir. 2008) (stating the manifest disregard standard will continue to be employed).

Even if "manifest disregard" remains good law, it is still a "very narrow standard of review." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995). "A mere error in interpretation or application of the law is insufficient." *Id.* "An arbitration panel acts with

4

manifest disregard if '(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle.'" *Elec. Data Sys. Corp. v. Donelson*, 473 F.3d 684, 691 (6th Cir. 2007) (quoting *Dawahare*, 210 F.3d at 669). Furthermore, "[i]f a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." *Id.* (quoting *Merrill Lynch*, 70 F.3d at 421).

## III.    VACATING OR MODIFYING THE ARBITRATION AWARD

Petitioner offers five reasons this Court should vacate or modify the arbitration award (Court File No. 2). First, Petitioner claims the arbitrator misconstrued Respondent's evidence and misapplied the law in concluding Respondent had satisfied the first prong of his prima facie case. Second, Petitioner contends the arbitrator ignored the fifteen-month time lapse between Plaintiff's alleged "protected activity" and his termination, which it claims is an essential element of proving the fourth prong of Respondent's prima facie case. Third, Petitioner claims the arbitrator improperly placed the burden of proof on Krystal under the *McDonnell Douglas* burden-shifting framework. Fourth, Petitioner claims the arbitrator violated applicable law by not considering Respondent's failure to file a timely charge with the Equal Employment Opportunity Commission ("EEOC") or the Tennessee Human Rights Commission ("THRC"). Finally, Petitioner claims the arbitrator improperly calculated damages.

Under 42 U.S.C. § 2000e-2(a), "it shall be an unlawful employment practice for an employer

5

(1) to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." The statute further provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff can prove a prima facie case of retaliation under Title VII or the THRA by showing by a preponderance of the evidence that: "(1) []he engaged in protected activity protected by Title VII; (2) the defendant knew of the plaintiff's exercise of [his] protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009); *see also Marpaka v. Hefner*, 289 S.W.3d 308, 313 (Tenn. Ct. App. 2008) (noting THRA claims are analyzed under the same framework as Title VII claims).[2] Under the *McDonnell Douglas* framework, after the plaintiff has successfully established his prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). The plaintiff must then prove the defendant's proffered reason is pretext for retaliation. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 492-93 (6th Cir. 2010).

Once a case has been tried on the merits, however, issues regarding whether the plaintiff made out his prima facie case and the *McDonnell Douglas* sequential framework drop from the

---

[2] In the context of the *McDonnell Douglas* sequential analysis, "prima facie case" means "the establishment of a legally mandatory, rebuttable presumption" not "the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n.7 (1981).

6

court's analysis. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 713-14 (1983) ("Because this case was fully tried on the merits, it is surprising to find the parties . . . still addressing the question whether Aikens made out a *prima facie* case. We think that by framing the issue in these terms, they have unnecessarily evaded the ultimate question of discrimination *vel non*."). The court should be focused on the "ultimate issue of discriminatory retaliation." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997). Stated differently, the primary inquiry should be whether the plaintiff produced sufficient evidence to show the employer terminated his job in retaliation for engaging in protected activity. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545-46 (6th Cir. 2008). The court may consider "all of the evidence in the record." *Id.* at 546. With that said, "there is nothing to prevent the court from considering evidence that also bears on that prima facie case as long as it does so in order to address the ultimate question of discrimination." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 825 (6th Cir. 2000).

Although each of Petitioner's arguments will be addressed in turn, this Court finds it noteworthy that the parties are focusing on the *McDonnell Douglas* test and whether a prima facie case was established as well as pretext. Such focus can easily lead a fact finder and the parties astray. At trial, it is the plaintiff's burden to establish its case by a preponderance of the evidence. A fact finder is called upon to decide whether it credits or discredits the plaintiff's narrative of the facts. In a simple case such as this with competing narratives--where the fact finder both saw and heard the plaintiff (along with other witnesses)--the fact finder merely had to make a credibility determination. Concepts such as prima facie case, pretext, and burden shifting only create needless confusion and possibility of error. It is important to note that the *McDonnell Douglas* framework is most helpful in determining which cases reach the trial stage. Once the case reaches trial,

however, this framework has little utility and can result in error. At trial, the question is whether the plaintiff can prove his case by a preponderance of the evidence--that is, whether the plaintiff has proven discrimination *vel non*. Application of the *McDonnell Douglas* test at trial could result in an erroneous placement of a burden on the defendant and lessen the standard of proof a plaintiff must present. In fact, at least one court of appeals has suggested the *McDonnell Douglas* test only has application at the summary judgment stage. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).

At this stage of review, this Court is focused on "the ultimate question of [retaliation] rather than on whether a plaintiff made out her prima facie case." *Kovacevich*, 224 F.3d at 825. To the extent the arbitrator did erroneously focus on Respondent's prima facie case and the *McDonnell Douglas* burden-shifting framework in his analysis, this Court concludes such reliance would amount to harmless error given that the arbitrator reached an appropriate and well-supported conclusion--that is, Petitioner intentionally discriminated or retaliated against Respondent because he opposed protected activity. Moreover, in light of the extremely deferential standard of review, even an arbitrator's misinterpretation or misapplication of the law would be insufficient grounds for vacatur when another court, such as this one, could find legally plausible arguments to reach the same conclusion as the arbitrator on Respondent's retaliation claim. *See Elec. Data Sys. Corp.*, 473 F.3d at 691.

### A.     "Unlawful Employment Practice"

Petitioner first argues that the arbitrator, applying the standard from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), misconstrued Respondent's testimony and drew a conclusion unsupported by the record or

8

applicable law. Petitioner claims the arbitrator improperly concluded that Petitioner had satisfied the first prong of his prima facie despite evidence to the contrary. As a result, Petitioner claims the arbitrator exceeded his power and demonstrated a manifest disregard for the law.

As noted above, the Court at this stage of review is not concerned with whether Respondent satisfied his prima facie case; rather, the Court is looking to see whether the arbitrator exceeded his power or demonstrated a manifest disregard for the law in concluding Petitioner retaliated against Respondent for engaging in protected activity, such as opposing an unlawful employment practice. An "unlawful employment practice" can include an employer's refusal to hire any individual on the basis of his race or color as well as an employer's practice to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's race." 42 U.S.C. § 2000e-2(a). An employee is protected under the law for "opposing any practice that the employee reasonably believes to be a violation of Title VII . . . whether or not the challenged practice is ultimately found to be unlawful." *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 570-71 (6th Cir. 2009) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000)).

Here, the arbitrator concluded Respondent engaged in protected activity when he hired Aric Long as district supervisor in the Knoxville area despite being told not to by his supervisor Jeffrey Krause. Although a vast amount of testimony was offered at the hearing on this matter, Petitioner focuses primarily on one statement made by Respondent as proof that the arbitrator misconstrued Respondent's testimony and drew an improper conclusion. At the hearing, Respondent described the following conversation that he had with Mr. Krause about hiring Mr. Long:

> I said, "Now, Jeff, I'm gonna go ahead and tell you, he's a black man." And he said, "Steve, I've told you before, Knoxville's not ready for a black district supervisor."

> And I said, "But he's the best candidate that I have." And he said, "Well, I'm not gonna interview him." And I said, "So where does that leave me?" He said, "Well you do what you want, but you're on your own."

(Hr'g Tr. at 525-26). Petitioner claims the arbitrator misconstrued this statement as a directive that Respondent not hire Mr. Long when, in fact, Respondent was told "[w]ell you do what you want."[3] However, the arbitrator considered this statement in its broader context along with other evidence in making his findings of fact. Among other things, despite Mr. Krause's denials, the arbitrator found Mr. Krause told Respondent not to hire Mr. Long because of his belief that "Knoxville [is] not ready for a black District Supervisor (Award at 17, ¶ 78). The arbitrator also found Mr. Krause did not interview Mr. Long, which was contrary to his previous practice (*id.* ¶ 79). He further considered the testimony of former Krystal employee Linda Mitchell who testified Mr. Krause told her he fired Respondent due to Respondent's hiring of Mr. Long without his permission (*id.* ¶ 80); the arbitrator concluded Ms. Mitchell's testimony was consistent with other evidence in the record (*id.* ¶ 81). Finally, the arbitrator considered not only the content of the testimony of the witnesses but also the witnesses' credibility. He explicitly noted in the award, "[h]aving had the opportunity to see and listen to the testimony of both Mr. Caldwell and Mr. Krause, the Arbitrator finds that Mr. Caldwell's testimony as to the circumstances of Mr. Long's hiring are more credible than Mr. Krause's" (*id.* ¶ 83). These findings are sufficiently supported by the record and, although Petitioner may be dissatisfied with them, "disagreement with an arbitrator's factual findings does not constitute

---

[3] Despite Petitioner's contentions, this Court is not convinced that the purpose and meaning of Mr. Krause's alleged statement can be deciphered by reading the phrase "[w]ell you do what you want" in isolation. Notwithstanding the latter half of the sentence ("but you're on your own") already being subject to multiple interpretations, both the broader context of the statement as well as intangible factors such as the tone, body language, and general credibility of the individual testifying must be considered.

10

grounds for a court's rejection of those findings." *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004) (citing *Tennessee Valley Auth. v. Tennessee Valley Trades & Labor Council*, 184 F.3d 510, 514 (6th Cir. 1999) (per curiam)). In the absence of any other evidence showing the arbitrator "exceeded his power" or engaged in any "misconduct," the Court will defer to the arbitrator's findings of fact.

This Court also concludes Petitioner has failed to demonstrate the award should be vacated on account of the arbitrator's interpretations of the law or his application of the law to the facts.[4] Contrary to Petitioner's claims, the arbitrator's conclusion that Respondent "opposed unlawful discrimination" is both legally plausible and supported by facts in the record (Award ¶ 84). The arbitrator explicitly found Respondent hired Mr. Long over the direction of Mr. Krause, which is conduct that would comfortably fall within the legal parameters of 42 U.S.C. §§ 2000e *et seq*. Moreover, even though Petitioner argues Respondent cannot prove discrimination or a "refusal to hire" since Mr. Long was ultimately hired, this does not change the fact that Respondent believed he was being directed to unlawfully discriminate against Mr. Long in the hiring process. He believed he was being asked by his employer to engage in conduct that would violate Title VII and the THRA, and he "opposed" this conduct by hiring Mr. Long nonetheless. Under the circumstances and based on the facts in the record, this Court concludes such a belief was reasonable. Therefore, even if Petitioner's conduct was not actually unlawful, Respondent would still receive protection under the law. *See Simpson*, 359 F. App'x at 570-71. Hence, Petitioner has failed to demonstrate that the arbitrator exceeded his power or acted with manifest disregard for the law in concluding Respondent

---

[4] It bears repeating that "mere error in interpretation or application of the law is insufficient" to justify vacating an arbitration award under the standard of manifest disregard for the law. *Merrill Lynch*, 70 F.3d at 421.

11

engaged in protected activity.

### B. Temporal Proximity

Petitioner also urges the Court to vacate the arbitration award because the arbitrator failed to mention or consider the fifteen-month time lapse that occurred between when Mr. Long was hired and when Respondent was terminated. Petitioner claims this analysis is an essential part of determining whether the fourth prong of Respondent's prima facie case has been satisfied. Again, however, the Court at this stage is concerned about whether there was sufficient proof for the arbitrator to conclude Petitioner intentionally retaliated against Respondent. The length of time between when the plaintiff engaged in protected activity and his termination can support an inference of retaliation, but it is not a required factor nor can it stand alone. *See DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004); *Taylor v. Bd. of Educ. of Memphis City Sch.*, 240 F. App'x 717, 721 (6th Cir. 2007). That the arbitrator failed to discuss the fifteen-month time lapse between the incident involving Mr. Long and Respondent's termination does not by itself necessitate that the arbitration award be vacated since "[a]rbitrators are not required to explain their decisions. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000).

Moreover, the arbitrator's factual findings do, in fact, support the conclusion that Respondent proved by a preponderance of the evidence that he was fired by Petitioner because he engaged in protected activity. For example, among other things, the arbitrator noted Respondent received a negative performance appraisal on February 22, 2006, approximately one month after the incident involving Mr. Long, and was subsequently placed on an "improvement plan" (Award at 8, ¶¶ 18-19). The arbitrator also highlighted examples over the next several months that demonstrated Respondent

12

was subjected to heightened scrutiny and negative criticism by his employer prior to his termination (*id.* ¶¶ 20-24, 27-41). These facts and the facts surrounding the incident involving Mr. Long, which are supported by the record, were sufficient for the arbitrator to conclude Petitioner's reason for Respondent's termination--that is, his failure to satisfy the Performance Improvement Plan--"was false *and* that discrimination was the real reason." *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 731 (6th Cir. 2004).[5] And this goes toward the ultimate inquiry of whether Petitioner intentionally retaliated against Respondent. Although Petitioner would have this Court view the available evidence through a different lens, this Court's review is limited to the question of whether the arbitrator exceeded his power or manifested a disregard for the law in deciding Respondent's case. Here, the Court can conclude neither.

### C.     Burden of Proof

Next, Petitioner argues the arbitrator improperly placed the burden of proof on Krystal in applying the *McDonnell Douglas* burden-shifting framework. As a preliminary matter, *McDonnell Douglas* drops out once the case is fully tried on the merits. *See Aikens*, 460 U.S. at 714-15. Thus, as noted before, the arbitrator's primary inquiry as fact finder is the ultimate question of retaliation. At trial, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [or retaliated] against the plaintiff remains at all times with the plaintiff." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (quoting *Burdine*, 450 U.S. at 253).

To the extent Petitioner contends the arbitrator, nonetheless, imposed a burden of proof on

---

[5] Petitioner claims there was also evidence in the record to establish Respondent had received negative reviews prior to the incident involving Mr. Long. The arbitrator acknowledged the earlier negative reviews but, in making his findings of fact, went to great lengths to distinguish them from the negative reviews received by Respondent after he engaged in protected activity.

Krystal, this Court concludes Petitioner's argument is unsubstantiated. Petitioner claims the arbitrator imposed a burden of proof on Krystal when he "implicitly criticized Krystal for failing to produce comparative evidence." The arbitrator did note at several points in his factual findings that there was "no evidence" or "no comparative evidence" in the record regarding issues such as Respondent's administrative performance and the performance of the restaurants Respondent was responsible for overseeing. Yet there is nothing in the record that would indicate the arbitrator attributed this lack of information to Petitioner or concluded Petitioner violated Title VII or the THRA on account of its failure to produce such information. If anything, it appears the arbitrator was simply stating what evidence was and was not available for consideration when he reached his decision. In the absence of any other evidence on this matter, the Court cannot conclude the arbitrator exceeded his power or manifested a disregard for the law.

### D. Respondent's Failure to File a Timely EEOC Charge

Petitioner also claims the arbitration award should be vacated because the arbitrator did not consider Respondent's failure to file a timely EEOC charge. It claims Respondent did not file his EEOC charge until 365 days after his termination, which exceeds the time limit set under both Title VII and the arbitration rules agreed to by the parties. At the outset, the Court notes that the arbitrator did give consideration to this issue raised by Petitioner, albeit limiting his discussion to a footnote. Moreover, as noted even by Petitioner, the time period for filing an EEOC charge is "subject to equitable doctrines, such as tolling or estoppel." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and

14

equitable tolling.").

Given that a court would have discretion in this area (though such discretion is limited), the arbitrator also had authority to allow Respondent to proceed despite the fact that Respondent had not filed a timely EEOC charge. In reaching his decision, the arbitrator first notes that neither party offered any controlling law regarding whether the EEOC charge was necessary in the arbitration context. And in fact, as noted earlier, filing an EEOC charge is not a jurisdictional requirement. Moreover, he notes that Petitioner's Dispute Resolution Program Rules and Procedures state that "[t]o the extent that any employee pursues a claim covered by this agreement . . . by some process other than the procedure outlined herein, the employee will be responsible for damages . . . associated with the company's enforcement of the Arbitration Agreement" (Award at 22 n.5).[6] Having such a rule could certainly result in an inequitable outcome for employees who do, in fact, choose to file an EEOC charge. Taking all of this into account as well as the circumstances of this particular case, the arbitrator concluded he would not make the timely filing of the EEOC charge a prerequisite to bringing a retaliation claim in this case. Because Petitioner has failed to show the arbitrator acted in such a manner where "no judge . . . could conceivably come to the same determination," the Court will not vacate the award on this ground. *See Merrill Lynch*, 70 F.3d at 421.

### E.      Damages

Finally, Petitioner argues that the arbitrator improperly calculated damages either in violation of Section 10 or Section 11 of the FAA. Generally, "when a court finds discrimination it must award

---

[6] The arbitrator also notes testimony from one of Krystal's directors of human resources who stated that Krystal could potentially have a claim against an employee for damages under those rules if the employee did file an EEOC charge.

15

backpay." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996) (citations omitted). "A backpay award should make the claimant whole, that is, to place him in the position he would have been in but for discrimination." *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 626 (6th Cir.1983). "A plaintiff has a duty to mitigate his damages by seeking suitable employment with reasonable diligence." *Thurman*, 90 F.3d at 1168. "If an employee suffers a 'wilful loss of earnings,' however, the employer's backpay liability is tolled." *Id.* at 1168-69. "It is the employer's burden to prove that backpay should be tolled." *Id.* at 1169 (citing *N.L.R.B. v. Ryder Sys. Inc.,* 983 F.2d 705, 712 (6th Cir.1993)). In making this determination, a court may consider whether the employee acted "intentionally" or "wilfully" in violating company policy or committed a "gross or egregious wrong." *See id.*

Here, Petitioner does not dispute the fact that Respondent attempted to mitigate his damages when he obtained employment at Clayton Homes from April 2, 2008 to August 20, 2008. Instead, Petitioner argues Respondent waived his right to any back or front pay after he was terminated from Clayton Homes due to "his own egregious failure to report for work or contact his employer, before or after receiving the letter terminating his employment" and because he "voluntarily withdrew himself from the job market and intentionally failed to earn money that he could have earned" (Court File No. 2 at 24).

The arbitrator did not provide an extensive discussion of how he applied the law to the facts on this issue, but he ultimately concluded Respondent was entitled to back pay and front pay. The arbitrator found "Mr. Caldwell was terminated by Clayton Homes on August 20, 2008 after failing to return to work after an unrelated accident and subsequent hospitalization" (Award at 19, ¶ 103). He also found that a staff member at Clayton Homes provided testimony that Respondent was fired

"after he failed to return to work and the Company unsuccessfully tried to contact him" (*id.* ¶ 104).

Admittedly, Respondent's failure to contact his employer and not show up to work would violate the policy at most workplaces, and certainly provides a justifiable grounds for termination. At the same time, whether Respondent's conduct rose to the level of an "egregious wrong" or an "intentional" effort to violate company policy is less obvious. The arbitrator made sure to note in his findings that Respondent did not return to work after he got into an accident and ended up being hospitalized. Although the Court can only speculate as to how much weight the arbitrator gave this finding--and the arbitrator is not required to make detailed findings or engage in a long legal analysis--it is certainly plausible that this arbitrator or another court might determine Respondent's accident affected his ability to return to work and minimizes the level of "wilfulness" on the part of Respondent.[7] Petitioner can certainly argue Respondent's conduct was careless and negligent, but it has failed to show no court based upon these facts and the broader record could conclude Respondent's conduct was unintentional or not wilful. Accordingly, this Court finds vacatur is improper on the issue of damages.

This Court also notes that Petitioner has failed to show that the arbitrator committed a "computational error" in calculating the total award amount that would necessitate modification pursuant to 9 U.S.C. § 11. See *Grain*, 551 F.3d at 378. The arbitrator himself noted in response to Petitioner's motion for modification of the interim award pursuant to AAA Employment Arbitration Rule 40 that he could find no computational errors that would necessitate modification under Rule 40. Similarly, here, this Court concludes that, although Petitioner may disagree with the amount of

---

[7] Respondent also claims that he immediately tried to inform his employer about his need for surgery and that his recovery time took longer than planned. With that said, the arbitrator did not include this fact in his findings and clearly it is an issue in dispute.

damages awarded, there is no evidence of a "material miscalculation" as required by statute for modification.

Because Petitioner cannot show the award should be vacated or modified under either 9 U.S.C. §§ 10 or 11, this Court will confirm the arbitrator's award.


## IV.     AWARD OF INTEREST

Respondent requests post-award interest from January 7, 2011, the date the interim award was entered by the arbitrator, until the date of payment. Petitioner contends Respondent is not entitled to receive interest predating entry of judgment by this Court. In the alternative, Petitioner argues that, even if prejudgment interest is awarded, it should not precede the date the arbitrator's final award was entered and the federal interest rate should be applied.

A district court confirming an arbitration award has discretion to include post-award, prejudgment interest. *Dealer Computer Servs., Inc. v. Dale Spradley Motors, Inc.*, No. 11-11853, 2012 WL 72284, at *6 (E.D. Mich. Jan. 10, 2012). *See, e.g.*, *Waterside Ocean Nav. Co. v. Int'l Nav. Ltd.*, 737 F.2d 150 (2d Cir. 1985) (stating a district court has discretion to award post-award, prejudgment interest in a case arising under federal law); *Gen. Electric v. Anson Stamping Co.*, 426 F. Supp. 2d 579 (W.D. Ky. 2006) (including post-award, prejudgment interest in an action brought under diversity jurisdiction). Moreover, in the Title VII context, courts have consistently held prejudgment interest assists in providing "complete compensation" to the plaintiff. *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 841-42 (6th Cir.1994) (citations omitted); *see also Shore v. Fed. Exp. Corp.*, 42 F.3d 373, 280 (6th Cir. 1994). "Prejudgment interest helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred."

18

*Wilson Metal Casket Co.*, 24 F.3d at 842. "The purpose of awarding prejudgment interest under Title VII . . . is to compensate victims both for the time value of the lost money as well as for the effects of inflation."*United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998). "Discrimination victims should not be penalized for delays in the judicial process and discriminating employers should not benefit from such delays." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1170 (citing *Wilson Metal Casket Co.*, 24 F.3d at 842).

If the court determines post-award, prejudgment interest is warranted and there is no statute to the contrary, it must then determine whether state or federal law governs the applicable interest rate. Admittedly, the First Circuit has stated that "[c]ourts are not entirely in accord on the question of whether federal or state law governs . . . the rate of [ ] post-award, prejudgment interest." *Fort Hill Builders, Inc. v. Nat'l Grange Mutual Ins. Co.*, 866 F.2d 11, 14 (1st Cir. 1989). However, if a case involves a federal question, it is within the district court's discretion to determine an appropriate interest rate. *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986); *E.E.O.C. v. Wooster Brush Co. Emp'rs Relief Assoc.*, 727 F.2d 566, 579 (6th Cir 1984). *Cf. Northrop Corp. v. Triad Int'l Marketing, S.A.*, 842 F.2d 1154, 1155-56 (9th Cir. 1988) (noting state law governs prejudgment interest in diversity cases). In the absence of a prejudgment interest rate mandated by federal law, many courts choose to apply state law. Under Tennessee law, Tenn. Code Ann. § 47-14-123, "the interest rate may be established by the court as a matter of equity 'at any rate not in excess of a maximum effective rate of ten percent (10%) per annum.'" *Reed v. Cracker Barrel Old Country Store, Inc.*, 171 F. Supp. 2d 751, 768 (M.D. Tenn. 2001) (awarding prejudgment interest in accordance with Tennessee law at a rate of 10% per annum in a case involving both Title VII and THRA claims). However, there is certainly support for courts using the rate prescribed for

post-judgment interest under 28 U.S.C. § 1961 for prejudgment interest. *See Sun Ship*, 785 F.2d at 63 (noting the post-judgment award rate found at 28 U.S.C. § 1961 does not "by its own operation apply to prejudgment interest," but a court "may be guided by the rate set out in 28 U.S.C. § 1961"); *Wooster Brush Co.*, 727 F.2d at 579 (noting the court is not bound to, but can certainly be guided by, the rate set out in 28 U.S.C. § 1961); *Cf. Nelson v. EG & G Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994) (quoting *W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984)) (noting the interest rate provided in 28 U.S.C. § 1961 for post-judgment interest is also generally appropriate for setting the rate of prejudgment interest "unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate").

Here, the Court has discretion in deciding whether to award prejudgment interest and, if such an award is made, what rate to set. Several reasons exist to award prejudgment interest in this case, namely the fact that the Court wants to ensure Respondent receives "complete compensation." Although Petitioner objects to any award of prejudgment interest, the Court concludes it would be unjust for Petitioner to benefit from essentially "an interest free loan as to relief awarded [to Respondent]" approximately one year ago, and Respondent should not be "penalized for putative delays in the administrative or judicial process." *Shore*, 42 F.3d at 380 (citing *Wilson Casket*, 24 F.3d at 842). With that said, this Court also concludes that because this case involves a federal question, it will exercise its discretion and apply an interest rate guided by 28 U.S.C. § 1961 rather than state law. Although the Court finds Respondent should receive prejudgment interest, it concludes Respondent's request for interest at the effective rate of 10% per annum, which is permissible under Tennessee law, would be a windfall, particularly in light of the current economic climate. *See Dorothy J v. City of New York*, 749 F. Supp. 2d 50, 81 (E.D.N.Y. 2010) (noting the

20

court would not apply the prejudgment interest rate of 9% per annum designated under New York law because such a rate "would produce a windfall for the plaintiffs in light of the historically low rates of interest and inflation that have prevailed over much of the relevant period"). Moreover, the federal rate appears to sufficiently satisfy the goals under Title VII for which prejudgment interest is commonly rewarded. *See Few v. Yellow Freight Sys., Inc.*, No. C84-2478-A, 1986 WL 6871, at *14 (N.D. Ohio Apr. 24, 1986) (deciding to award prejudgment interest at the effective post-judgment interest rate under 28 U.S.C. § 1961 "since it is relatively responsive to the going rates of interest in the commercial markets, and because it serves to assist in the accomplishment of the purpose of the overall scheme of Title VII to make the plaintiff whole").[8]

Finally, the Court must determine on what date the award of prejudgment interest begins. Generally, interest should be awarded from the date of the arbitration award. *Marion Mfg. Co. v. Long*, 588 F.2d 538 (6th Cir. 1978) (noting that "if the award is upheld in a reviewing court, the rights of the parties are determined from the date of the award and not the date of the court's judgment confirming the award"); *see also Sun Ship*, 785 F.2d at 63. The parties here dispute whether the appropriate date to use is the date the interim award was issued or the date the final award was issued. Although Petitioner objects to Respondent's request for prejudgment interest from the date the interim award was issued, Petitioner fails to offer any case law to support its objection. Rather, it relies upon the simple contention that interest can only be awarded, if at all, from the date on which the award is made final. However, even focusing on the issue of finality, the arbitrator

---

[8] In not awarding prejudgment interest at 10% per annum, this Court also considered the fact that the arbitrator declined to grant pre-award, prejudgment interest because he believed Respondent had been "adequately compensated" (Court File No. 2-5 at 9). Although the Court finds grounds do exist for post-award, prejudgment interest, the fact that the arbitrator did not consider it necessary certainly leads this Court to conclude a rate significantly lower than 10% per annum is sufficient.

noted in the "final award" that the interim award "resolved all issues in this case except those reserved and the incidental issue of costs/expenses" (Court File No. 2-5). In particular, the interim award resolved Respondent's claims on their merits and awarded damages. The interim award also stated that it would "remain in full force and effect until such time as a Final Award is rendered" (Award at 5). *Cf. Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984) (noting that, for purposes of confirmation, even "an 'interim' award that finally and definitively disposes of a separate independent claim may be confirmed 'notwithstanding the absence of an award that finally disposes of all the claims that were submitted for arbitration'"), *abrogated on other grounds*, *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193 (2000). Because it appears the interim award was essentially "final," notwithstanding a few administrative issues such as attorney's fees and costs that still needed to be addressed, and because Respondent contends in his brief that damages had also been liquidated at this point, the Court determines prejudgment interest should run from the date of the interim award--that is, January 7, 2011.

Accordingly, this Court concludes Respondent is entitled to post-award, prejudgment interest beginning January 7, 2011, at the rate used for post-judgment interest under 28 U.S.C. § 1961, until judgment is entered by this Court.[9]

## V.     CONCLUSION

For the foregoing reasons, this Court will **DENY** Petitioner's petition to vacate the

---

[9] Respondent is entitled to receive post-judgment interest upon entry of this judgment at the rate specified pursuant to 28 U.S.C. § 1961. This issue was never in dispute between the parties.

arbitration award (Court File No. 1), and **GRANT IN PART** Respondent's motion to confirm the

arbitration award with interest (Court File No. 15). Specifically, the Court will **CONFIRM** the

arbitration award pursuant to 9 U.S.C. § 9. The Court will **AWARD** Respondent post-award,

prejudgment interest, which will be calculated at the rate set for post-judgment interest under 28

U.S.C. § 1961. Respondent's post-award, prejudgment interest will run from January 7, 2011, until

entry of this judgment.

An Order shall enter.


**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

23